UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **GLORIMARI NIEVES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:07-cv-01433-WTL-TAB |
| | ) | |
| **ADECCO EMPLOYMENT,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant Adecco Employment's ("Adecco") Motion for Summary Judgment (Docket No. 70). The motion is fully briefed and, for the reasons explained herein, Adecco's Motion for Summary Judgment is **GRANTED**. The Plaintiff's Motion to Strike (Docket No. 74) is **DENIED**.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th

Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Methodist Med. Ctr. of Ill. v. Am. Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wolf v. Northwestern Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001), *cert. denied*, 534 U.S. 1028 (2001). "[T]he court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

In evaluating a motion for summary judgment, although the court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute; "instead, the nonmoving party must present definitely, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). "If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II.  BACKGROUND[1]

Adecco provides temporary and contract staffing to other employers.  It has multiple offices in the United States, including a location in Indianapolis, Indiana.  As a branch manager in Adecco's Indianapolis office, the Plaintiff, Glorimari Nieves, conducted sales calls, maintained the branch's budget, hired staff for the branch, and supervised the on-site employees. She also managed Adecco's client relationships, particularly the one with Stanley Security Solutions ("Stanley").  In the summer of 2006, Nieves learned that she was pregnant with the child of Kendyll Pope.  Pope had been placed by Adecco as a temporary laborer at Stanley.

During the fourth or fifth month of her pregnancy, Nieves was required to take two weeks of bed rest due to pregnancy complications.  When Nieves returned to work at Adecco, Becky Kirchner-Wells, the Adecco Area Director for Central Indiana, told her that there was a possibility that she may require additional bed rest.  Nieves interpreted Kirchner-Wells' comments as "negative."  (Docket No. 72 Ex. 1 at 39).  Based on Kirchner-Wells' suggestion that Nieves may require additional bed rest, Nieves concluded that Kirchner-Wells was implying that she would not be able to work for the duration of her pregnancy if she were indeed required to take additional bed rest.  Kirchner-Wells did not actually say this, however.  When asked why she interpreted Kirchner-Wells' suggestion as negative, Nieves responded: "That, you know, now that I'm having complications, I'm bigger, that I wouldn't be able to work."  (*Id.* at 40, lines 23-24).  Nieves also characterized Kirchner-Wells' suggestion that she might need additional bed rest as "sarcastic."  (*Id.* at 41, line 4).

---

[1]     In addressing the instant motion, the Court has only considered the relevant facts that are undisputed or favorable to Nieves.  Consequently, the Court need not address Nieves's motion to strike, which is **DENIED**.

Around the same time, Pope failed to report for a scheduled shift at Stanley. Adecco employee Anderlyn Owens made an entry in Adecco's computer records reflecting that Pope had not properly completed his assignment at Stanley. Thereafter, Nieves accessed the computer records and made a change to the entry about Pope to show that his assignment at Stanley was in fact completed. The effect of this change was to allow Pope to obtain another assignment.

On October 9, 2006, Kimberly Brown replaced Owens as the Adecco on-site supervisor at Stanley. Brown later resigned from Adecco, and ultimately lodged a complaint with Adecco's ethics hotline alleging that Nieves had violated Adecco's code of conduct by having Pope placed in an assignment while the two were romantically involved.

Stanley began an investigation of Nieves's conduct. Stanley's investigation concluded in part that: (1) Nieves and Pope had a close personal relationship; (2) that Nieves was pregnant with Pope's child; (3) that Nieves had facilitated Pope's placement at Stanley; and that (4) Nieves had been involved in the submission of time for Pope's hours that was inconsistent with the time he was actually present at Stanley. Stanley was also concerned with a number of other inconsistencies with regard to records that appeared to have been managed by Nieves.

Adecco ultimately launched its own investigation. On December 13, 2006, Meric Craig Bloch ("Bloch"), Adecco's Global Vice President and Investigative Counsel, traveled to Indianapolis to meet with Stanley representatives regarding Nieves's misconduct. Bloch met with Nieves on December 14, 2006. He informed her that he was conducting an investigation regarding her conduct, and that he needed to interview her as part of that investigation.

Nieves complains that during this meeting, Bloch made negative comments about her pregnancy. In particular, Nieves contends that Bloch told her that she could be fired if she did not admit that her pregnancy caused her to make "desperate decisions" or "wrong decisions."

(*Id.* at 43, lines 13-14).  Nieves testified that Bloch identified her "wrong decision" to be her falsification of records in Adecco's system pertaining to Pope's employment at Stanley.  (*Id.* at 43-44).

Following her interview with Bloch, Nieves complained to Kirchner-Wells that Bloch asked her questions about her pregnancy.  Nieves claims that she did not complain to Human Resources because Kirchner-Wells told her "not to worry about it."  (*Id.* at 128, line 6).  Bloch submitted his investigation report to Adecco, which did not include a recommendation to terminate Nieves.

On January 2, 2007, Kirchner-Wells informed Nieves of Adecco's decision to terminate her employment.  Adecco claims that Bloch's investigation report, Stanley's report, and Brown's complaint all contributed to its decision to terminate Nieves.  Kirchner-Wells informed Nieves that the reason for her termination was the falsification of information in Adecco's computer system.  On February 26, 2007, Adecco's human resources responded to Nieves's request for information about her termination and reiterated that the reason for her termination was Nieves' falsification of information in Adecco's computer system.

The next day, Nieves filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race, national origin, and pregnancy.  Missing from the EEOC charge is Nieves's allegation that Bloch told her that she could be fired if she did not admit that her pregnancy caused her to make "desperate decisions" or "wrong decisions."

On November 15, 2007, Nieves filed an amended complaint against Adecco alleging: (1) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) race and/or ethnicity in violation of 42 U.S.C. § 1981; and (3) discrimination and/or harassment

5

because of her pregnancy in violation of the Pregnancy Discrimination Act ("PDA").  On August 17, 2009, the Court granted Adecco's Motion for Summary Judgment as to Nieves's Title VII, § 1981, and pregnancy discrimination claims.  Thus, the sole matter remaining before the Court is Adecco's Motion for Summary Judgment on Nieves's pregnancy harassment claim.

### III.  DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual" in the terms and conditions of employment "because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  In 1978, the PDA amended Title VII of the Civil Rights Act of 1964 by specifying that the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, and women affected by pregnancy.  42 U.S.C. § 2000e(k).

Federal courts have recognized the possibility of a pregnancy harassment claim under Title VII, and have reached the merits of such cases by adapting the standards used for other harassment cases.  *See, e.g.*, *Habben v. City of Fort Dodge*, 472 F. Supp. 2d 1142, 1168 (N.D. Iowa 2007); *Glunt v. GES Exposition Servs.*, *Inc.*, 123 F. Supp. 2d 847, 863 (D. Md. 2000); *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1245-46 (D. Md. 1997); *Donaldson v. Am. Banco Corp.*, *Inc*., 945 F. Supp. 1456, 1461 (D. Colo. 1996).

Nieves argues that she has established a *prima facie* case of pregnancy harassment by attempting to show that she was subjected to a hostile or abusive work environment on the basis of her pregnancy, in violation of Title VII.  To succeed on a claim of pregnancy harassment, Nieves must offer evidence that: (1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her pregnancy; (3) the conduct was

either severe or pervasive; and (4) there is a basis for employer liability.  *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) (hostile environment claim because of gender).

Nieves contends that two separate incidents are evidence of Adecco's pregnancy harassment: (1) Kirchner-Wells' comments that as a result of Nieves's complications with her pregnancy, she may require additional bed rest; and (2) Bloch's comment suggesting that Nieves's pregnancy caused her to make "desperate decisions" or "wrong decisions."

To rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that the work environment becomes hostile or abusive.  *Scruggs*, 587 F.3d at 840-41; *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). To be considered severe or pervasive, the conduct must be subjectively and objectively hostile or abusive.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); *Scruggs*, 587 F.3d at 840.

Nieves asserts that she subjectively perceived Kirchner-Wells' and Bloch's comments as hostile or abusive.  Adecco argues that Nieves was not subjectively offended by the comments because: (1) Nieves did not complain to anyone in Adecco's Human Resources Department about the comments made by Kirchner-Wells or Bloch; (2) she did not mention the comments allegedly made by Kirchner-Wells or Bloch in her filings with the EEOC; (3) the only complaint made by Nieves was to Kirchner-Wells immediately following her interview with Bloch; and (4) she testified that she perceived Kirchner-Wells' comments as "negative" and "sarcastic" and such characterizations do not rise to the level of harassment.  Although summary judgment is appropriate when the plaintiff does not show that she considered her workplace subjectively offensive, *see Bannon v. University of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007), the Court takes Nieves assertion as true and presumes that she was subjectively offended.

However, even assuming that Nieves was subjectively offended, her pregnancy harassment claims fail the objective element of the hostile environment analysis.  Whether conduct is objectively hostile or abusive turns on "all of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 21-22; *Hostetler v. Quality Dining, Inc*, 218 F. 3d 798, 806-07 (7th Cir. 2000).  Offhand comments and isolated incidents do not rise to the level of conduct that alters the conditions of employment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998).  No reasonable jury could find that the comments made by Kirchner-Wells and Bloch, whether considered separately or in aggregate, amount to the level of severe or pervasive harassment so as to create a hostile or abusive work environment for Nieves.

Nieves analogizes her circumstances to those in *Quantock v. Shared Marketing Services, Inc.*, 312 F.3d 899 (7th Cir. 2002).  In *Quantock*, the plaintiff's supervisor allegedly propositioned her for sex three times in one conversation by first asking her for oral sex, then to participate in a "threesome," and then finally propositioned her for "phone sex."  *Id.* at 902.  The Seventh Circuit determined that a reasonable jury could find, as an objective matter, that the supervisor's sexual propositions were sufficiently severe to alter the terms of plaintiff's employment.

The facts in *Quantock* are inapposite to the case at bar.  Following two weeks of bed rest due to complications with her pregnancy, Kirchner-Wells allegedly told Nieves that she may need to go on additional bed rest if she experienced further complications with her pregnancy.  In *Quantock*, the company president allegedly asked the plaintiff for sex three times.  Kirchner-

Wells' comments may even be interpreted to be sympathetic and accommodating to Nieves's situation, given that Nieves had experienced complications with her pregnancy. Nieves's own interpretations of Kirchner-Wells comments as being "negative" and "sarcastic," as well as her own conclusion that Kirchner-Wells was actually telling her that she would no longer be able to work because she was "getting bigger" affect only the subjective analysis.

Similarly, Bloch's comments regarding Nieves making "desperate decisions" simply do not rise to the level of severity as the comments in *Quantock*. *See*, *e.g., Scruggs,* 587 F.3d at 841 (upholding summary judgment for defendant where the district court found no objectively hostile work environment where Plaintiff's supervisor made several comments that she was "made for the back seat of a car" and looked like a "dyke").

Nieves further argues that the comments made by Kirchner-Wells and Bloch, considered together, establish that she was subjected to pervasive harassment. This claim also fails. *See, e.g., Moser v. Ind. Dept. of Corrs.*, 406 F.3d 895 (7th Cir. 2005) (upholding the district court's conclusion that the work environment was not objectively hostile when the plaintiff was: (1) subjected to comments by a co-worker about her "tits;" (2) asked by the same co-worker whether she had gotten a new set of legs; (3) was subjected to comments by the same co-worker about his penis size; and (4) was subjected to profanity by the same co-worker. The co-worker also made comments about other female co-workers, namely, that one was running a whorehouse and that another "just needed a good f* * *.").

Title VII is not a code of general civility. *Faragher*, 524 U.S. at 788. Offhand remarks and isolated incidents that are not extremely serious do not amount to actionable harassment. *Onscale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 81 (1998). Because there is no genuine issue of material fact that requires trial, and no reasonable jury could conclude that

9

Nieves was subjected to conduct sufficiently severe or pervasive such that her work environment became hostile or abusive, Adecco is entitled to summary judgment in its favor.

## IV. CONCLUSION

For the foregoing, the Defendant's Motion for Summary Judgment is **GRANTED**. The Plaintiff's Motion to Strike is **DENIED**.

SO ORDERED:   04/12/2010

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Denise K. LaRue
Haskin Lauter & Larue
dlarue@hlllaw.com

Richard W. Mcminn
Haskin Lauter & Larue
rmcminn@hlllaw.com

Michael A. Moffatt
Littler Mendelson P.C.
mmoffatt@littler.com

Brian Lee Mosby
Littler Mendelson P.C.
bmosby@littler.com